

BEN B. RUBINOWITZ
JEFFREY B. BLOOM
ANTHONY H. GAIR
HOWARD S. HERSHENHORN*
RICHARD M. STEIGMAN
DIANA M. A. CARNEMOLLA*
PETER J. SAGHIR
MARIJO C. ADIMEY*
CHRISTOPHER J. DONADIO*
DANIEL L. BROOK, MD, JD
RACHEL L. JACOBS
JAMES S. RUBINOWITZ
DAVID H. LARKIN
MICHELLE L. LEVINE
ALLAN ZELIKOVIC
RICHARD SOLDANO*
ALEX R. BLOOM
CONOR D. CASSIDY
ALEA K. ROBERTS*

Counselors at Law
80 Pine Street, 34th Floor
New York, NY 10005
Tel: 212-943-1090
Fax: 212-425-7513
www.gairgair.com

New Jersey Office
One Gateway Center, Ste. 2600
Newark, NJ 07102
Tel: 973-645-0581
Fax: 973-622-8160

* MEMBER OF N.Y. & N.J. BARS

December 30, 2022

**BY ECF**

Honorable Vera M. Scanlon
United States Magistrate Judge
Eastern District of New York United States Courthouse
 225 Cadman Plaza East
Brooklyn, New York 11201

      Re: Terkeltaub v. United States of America
         Civil Action No. CV-20-3938

Dear Honorable Madam:

    This law firm represents the plaintiffs, and we submit this letter in opposition to the defendant's application by letter dated 12/15/2022.

    The single issue before this Court is whether any "change in circumstance" allegedly happened that warrants allowing the defendant's life care planner to enter the plaintiffs' home, inspect her living conditions, and conduct a 3-hour interview of the plaintiff regarding an allegedly "new" need for home assistance. Defense counsel does not disclose in his application letter any details of the purpose and/or scope of the requested interview and home inspection, but separately advised the undersigned that the defense wants to conduct a 3-hour interview by the defendant's life care planner with home inspection.

    This medical malpractice action arose when the attempted vaginal delivery was converted to an emergent Cesarean section because the fetal heart tracings revealed non-reassuring fetal heart rate during labor. Plaintiffs allege Dr. Postell performed an inappropriate and improper low hysterotomy and a transverse cystotomy during the procedure. Specifically, the very low transverse cut he made was through the bladder and caused bilateral ureteral injury. During this Cesarean section, the plaintiff suffered massive



*Honorable Vera M. Scanlon*
*December 30, 2022*

blood loss of 4 liters. It is alleged, that due to the massive urologic and vascular injuries, along with major blood loss suffered during the Cesarean section performed by Dr. Postell, Mrs. Terkeltaub developed DIC and acute renal failure requiring dialysis for many months; this was likely secondary to acute tubular necrosis. Mrs. Terkeltaub ultimately needed a kidney transplant and she underwent transplant surgery on 5/29/2019.

The <u>only</u> basis cited by the defense for this application is their claim that when their non-medical expert, life care planner, Diane Simmons Grab, finalized her report dated 11/1/2022, she was <u>unaware</u> the plaintiff needed assistance at home.

Specifically, the movant claims that at the time of plaintiffs' depositions conducted on 9/2/2021, the defense was unaware plaintiff needed help at home and only learned this *after* the plaintiffs' depositions were held. In other words, the defense alleges that the need and claim for home assistance is new and did not exist when the plaintiffs were deposed on 9/2/2021 or when the defense expert wrote her life care plan. In particular, the defense contends that he and the defendant's expert life care planner were completely unaware that (1) the plaintiff needed assistance at home with daily living activities, (2) personal care assistance services for housekeeping had been recommended, and (3) home assistance services had been provided. Plaintiffs submit that this is completely inaccurate and therefore the requested relief must be denied in its entirety.

Defense counsel incorrectly claims that his life care planner, Diane Simmons Grab, had not previously requested a home visit to assess plaintiff's life care needs "based on Ms. Terkeltaub's prior deposition testimony that she did not have a home health aide." Further, defense counsel explains that "the circumstances have changed since plaintiff's 9/2021 deposition, and that there now exists a need for Ms. Simmons Grab to visit plaintiff at home to assess her life care needs so that she was not aware that the plaintiff needed a home health aide before writing her may supplement her report." In other words, the defense claims that, in 11/2022, the defense and defendant's expert life care planner **had no knowledge** that Mrs. Terkeltaub had a need for personal care assistance services for housekeeping. This is completely untrue. What the defense overlooks and cannot deny is the unmistakable fact that defense expert Ms. Simmons Grab described ***<u>in her own report dated 11/1/2022</u>*** **that Dr. Afshin Shahkoohi records**



*Honorable Vera M. Scanlon*
*December 30, 2022*

reported **"Physician order for personal care assistance services for housekeeping."** (see, Exhibit A, pp. 12-13).

      While fully knowing that, as of 6/19/2019, the plaintiff's treating physician, Dr. Afshin Shahkoohi, recognized Mrs. Terkeltaub needed housekeeping help and services and ordered that she receive housekeeping services at home, defense expert, Diane Simmons Grab, made her findings and recommendations without raising any question for the housekeeping services that had been ordered by the plaintiff's treating doctor <u>more than three years</u> before she finalized her report in 11/2022. (See, Exhibit A). More importantly, defense expert, Ms. Simmons Grab, did not state in any way that she could not finalize her report without either speaking with the plaintiff or entering the plaintiffs' home for a home inspection of the plaintiff's needs when she fully knew plaintiff Aaron Terkeltaub testified that his wife needed help with housekeeping (see, Exhibit A, pp. 6 and 17 and Exhibit, B, pp.15-16 ), and Dr. Afshin Shahkoohi also ordered "personal care assistance services for housekeeping." (see, Exhibit A, pp. 12-13). In addition to ignoring the physician's order for housekeeping services that was made in 6/2019, Ms. Simmons Grab's report does not discuss any need to enter the plaintiff's home, inspect the plaintiff's home environment, and conduct a 3-hour interview of the plaintiff. Also, Ms. Simmons Grab's report does not indicate that she was prevented from making full and complete findings and recommendations without speaking with the plaintiff and/or inspecting her home even though she knew that Dr. Shahkoohi had recommended she receive personal care assistance services for housekeeping. Furthermore, Ms. Simmons Grab's 53-page report does not include any request or reservation to interview the plaintiffs or enter their home for a home inspection under any circumstances. Moreover, the 11/2022 report of Ms. Simmons Grab does not include any discussion that her opinion, recommendation and/or findings would change, or that she was required to interview the plaintiffs and inspect their home due to the "personal care assistance services for housekeeping" ordered by the plaintiff's treating physician on 6/19/2020. It is clear, that the defendant's life care planner, Ms. Simmons Grab, knew that Mrs. Terkeltaub needed household assistance and that the services for housekeeping had been ordered by plaintiff's physician in 6/2019, but was still able to give her opinion and finalize her report without speaking with the plaintiff and/or inspecting plaintiff's home. Clearly, no basis exists for the requested interview and home inspection and this application should be summarily denied.



*Honorable Vera M. Scanlon*
*December 30, 2022*

Furthermore, the defense's claim he was unaware that plaintiff needed household assistance and recommendation for personal care assistance services for housekeeping is simply not accurate. It was at the plaintiff's deposition on 9/2/2021, conducted by the moving defense counsel and more than one year before the life care plan was finalized, when Mr. Terkeltaub gave testimony that the plaintiff, Tzirel Terkeltaub, was not performing all of the activities to care for her family and needed assistance in the home. While defense counsel chose to only briefly ask a couple of questions regarding the plaintiffs' need for a home health aide at this deposition, it was unmistakably clear from the plaintiff, Aron Terkeltaub's, testimony that the defense knew: (1) plaintiff was not performing all of usual home duties, (2) plaintiff needed assistance with her usual duties for her home, family and herself, (3) plaintiff needed a housekeeper to help with her duties and (4) plaintiff had a visiting nurse that was paid by Medicare to assist the plaintiff at home.

Even though defense counsel chose to question the plaintiffs <u>only minimally</u>, it was during the short, 25-minute deposition that plaintiff's husband, Aron Terkeltaub, clearly testified a need existed for home health aide services and for the personal care assistance services for housekeeping (that was ordered in 6/2019); yet, the defense chose to only ask a couple of questions about his wife's activities. Despite the defense's brief, limited questioning, Mr. Terkeltaub's testimony reflected the need for home assistance existed well before Ms. Simmons Grab's life care plan was ever finalized. Specifically, the only questioning and testimony regarding this issue was as follows:

Q. What is your wife's income since the birth of your last child in 2017?
A. Nothing.
Q. Okay. So she has not worked?
A. No.
Q. Just in the house?
A. What?
Q. She is a homemaker?
A. She is at home. She couldn't be a homemaker. She couldn't do nothing in the house now, but before she worked in business and she came home and she cooked and she made everything, but now she does nothing. She is only laying in bed and weak and the kids stand around her bed asking for help. You can come to my house and see all the clothes on the floor. We are always going to the store and buying new



*Honorable Vera M. Scanlon*
*December 30, 2022*

ones and it's a very big expense for me for that. I have to go buy more and more clothes for the kids because there is no housekeeper at home.
Q. So you don't have a housekeeper. You done (sic) hire a housekeeper; is that right?
A. So she has a nurse coming in every night for three hours. Medicaid pays for that, coming and helps her, something for her.
Q. Well, the nurse deals with her medical issues, but do you have a housekeeper?
A. No.
Q. Okay. Now prior to the birth of your last child, how much did she make a year? (See, Exhibit B, pp. 15-16).

While the defense had the opportunity to explore the quality, nature and extent of the plaintiffs' claims, the defense decided to conduct limited and brief depositions of the plaintiffs.

In addition to failing to show a good faith basis for the requested 3-hour interview and home inspection by the defendant's expert life care planner, the defense has refused to disclose and explain the purpose and details of the life care planner's home inspection. Specifically, defense counsel has repeatedly refused to explain why the defense is now seeking unrestricted access to the plaintiffs' home, and the scope of the home inspection and 3-hour interview of the plaintiff by a non-medical expert witness for the supposedly "changed circumstances" claimed by defense counsel and not requested by the expert witness in her finalized life care plan. Before this application was made, the undersigned tried several times to discuss with the defense the purpose and scope of the new, requested discovery, however defense counsel would not engage in good faith discussions and simply repeatedly refused to "provide a script" of the scope or purpose of the 3-hour interview and inspection sought by the defense to be conducted by his life care planner.

Furthermore, plaintiff submits that this Court must disregard the defense's reliance upon Sosa v. USA, CV-07-0532, ZHW v. USA CV-12-3912, Canales v. USA, CV-19-0834, Bennett v. USA, CV-19-2021 and Labiner v. USA, CV-19-3159. (see, Exhibit C). By citing these four cases, the defense appears to indirectly suggest home visits by a life care planner are "standard procedure," which inappropriately suggests that this or other courts expressly ruled or directed a home inspection be conducted by a life care planner. It appears that the defense is simply suggesting that, in his personal experience, he is aware that life care planners have visited the plaintiffs' homes in four cases defense counsel has or is litigating. Significantly,



*Honorable Vera M. Scanlon*
*December 30, 2022*

the defense fails to provide a copy of the life care plans in any one of the four cases to show the plaintiff's injuries and claims and the need for a 3-hour interview and/or home inspection. Plaintiffs' counsel agrees that there may be certain claims and injuries suffered by plaintiffs (such as paralysis or dismemberment) when a life care planner may consider visiting the plaintiff's home, such instances may require that homes be changed or modified to help a plaintiff live at home - i.e., installation of ramps or elevators, widening of hallways, wheelchair accessibility, etc. and all parties must consider the economic costs for home modifications. However, in this case, plaintiffs Terkeltaub submit that plaintiff, Mrs. Terkeltaub, has not suffered an injury that would require home modification and the injuries and claims do not warrant a 3-hour in-home interview and unrestricted, home inspection. What is more, all parties can agree that the majority of life care planners have not had home visits since COVID pandemic outbreak in 2020 including many cases involving injuries suffered by plaintiffs (such as paralysis or dismemberment) and the parties' life care planner, like the defendant's expert witness Ms. Simmons Grab did in this matter, can finalize their report without ever meeting the plaintiff and/or doing a home inspection.

The defendant's reliance upon <u>McMillan v. City of New York</u>, 2008 WL 4287573 (E.D.N.Y.), is also misplaced. In <u>McMillan</u>, the plaintiff suffered spinal cord injuries and was paralyzed after a boat incident. Clearly, cases involving paralysis like <u>McMillian</u> would involve claims of home modification and at-home medical care. <u>McMillan</u>, is factually distinguishable from the instant matter and should not be considered by this court. (See, a copy of <u>McMillan</u> is Exhibit D).

Finally, it should be noted that plaintiffs' own expert life care planner did not conduct an at-home inspection of the plaintiffs' home. Plaintiffs served their life care report upon the defense and no home inspection was ever conducted. Indeed, during the various conversations Plaintiffs' counsel attempted to have with the defense in an effort to resolve this issue the undersigned did in fact offer to stipulate and agree with the defense that neither party's life care planner would visit the plaintiffs' home, but defense counsel refused to agree.

In light of the foregoing, the plaintiffs respectfully submit that the requested application be denied in its entirety because it is clear the defendant's life care planner, Ms. Simmons Grab, knew that Mrs. Terkeltaub needed household assistance and the services for housekeeping (which had been ordered by



*Honorable Vera M. Scanlon*
*December 30, 2022*

plaintiff's physician in 6/2019) and was still able to give her opinion and finalize her report without speaking with the plaintiff and/or inspecting plaintiff's home.

    The plaintiffs and the undersigned thank this Court for its assistance with this matter.

                        Respectfully Submitted,

                        *Diana M.A. Carnemolla*
                        Diana M.A. Carnemolla, Esq.
                        dcarnemolla@gairgair.com
                        Attorney for Plaintiffs
                        Gair Gair Conason Rubinowitz Bloom
                        Hershenhorn Steigman & Mackauf

Cc: Kevan Cleary, Esq. (By: ECF)
Attorney for Defendant